UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEE DAVIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02067-JPH-TAB |
| | ) | |
| STANLEY KNIGHT, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Lee Davis's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case IYC 20-02-0071. For the reasons that follow, Mr. Davis's petition is **denied**.

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974).

## II. The Disciplinary Proceeding

The prison staff at Plainfield Correctional Facility charged Mr. Davis with violating Disciplinary Code 231-B, Intoxicants, following an incident in his housing unit. Officer O. Adamson recorded her account of the incident in the following conduct report:

> On 2/8/2020 at approximately 11:00 pm I, Officer O. Adamson, was conducting a guard one pipe round in A unit when I saw Offender Davis, Lee, 208538, smoking in A unit bed area. I ordered the offender to hand me the homemade cigarette, the offender proceeded to ignore me as if he didn't hear me. He then threw the homemade cigarette under his chair. I secured the cigarette and ordered the offender to follow me to the Sgt's office in north dorm for a more thorough search. No further contraband was found on the offender and he was returned to his unit. I then opened the handmade cigarette and noticed there was tea with a white strip of paper the appeared to be chemically laced. The offender was questioned about the handmade cigarette containing a possibly chemically laced piece of paper and denied any ownership or knowledge of it. The offender was informed that he would be receiving a 231B conduct report for Intoxicants. The contraband was taken to shift office for photographs and then secured in an I&I locker.

Dkt. 12-1. Officer Adamson's notice of confiscated property describes the item Mr. Davis was smoking as a "homemade cigarette containing chemical soaked papers." Dkt. 12-2.

An inmate violates Code 231-B by "[m]aking or possessing intoxicants, or being under the influence of any intoxicating substance (e.g., alcohol, inhalants)." Dkt. 12-13. An "intoxicating substance" is "[a]nything which if taken into the body may alter or impair normal mental or physical functions, not including tobacco." Dkt. 12-14.

When Mr. Davis received notice of the charge, he asked to present testimony from fellow inmate Erik Whitesell and requested security video from the time of the incident. Dkt. 12-3. Whitesell provided a written statement to the effect that he was with Mr. Davis at the time of the incident, Mr. Davis was not smoking anything, Mr. Davis stood up at Officer Adamson's direction, and Officer Adamson did not confiscate anything from Mr. Davis. Dkt. 12-5. Hearing Officer Andrews determined that allowing Mr. Davis to review the video would endanger prison security by allowing him "to learn the limitations and capabilities of the facility's cameras." Dkt. 12-9.

Officer Andrews instead provided Mr. Davis with a written summary of the video that simply states, "Due to the lighting in the unit (11PM, all lights out), this incident is unclear." *Id.* The Court has reviewed the video *in camera*. *See* dkt. 15. The housing unit is dark, and the Court cannot discern any detail to corroborate or contradict Officer Adamson's account.

The record also includes a document entitled "Suspicious Substance Confirmation." Dkt. 12-6. This appears to be a form modified for use in Mr. Davis's case. The document notes that inmates at Mr. Davis's prison commonly smoke homemade cigarettes including small fragments of paper soaked in insecticide and herbicide chemicals as an alternative to other drugs. *Id.* It states that the prison staff is unable to use chemical tests to determine the composition of such cigarettes and that the prison's policy is to instead treat items "that appear to be used for smoking/consuming an intoxicant" as intoxicants that violate the Disciplinary Code. *Id.* Investigator P. Prulhiere filled in blanks on the form to indicate that he reviewed the cigarette confiscated from Mr. Davis, and the first page of the form concludes: "Based on my training and experience I believe that the item submitted meets the qualification for an intoxicant substance." *Id.* The second page features what appear to be a picture of a cigarette and Investigator Prulhiere's signature. Dkt. 12-7.

According to Officer Andrews, Mr. Davis stated at his disciplinary hearing "that he was not in possession of any of the contraband." Dkt. 12-4. After considering that statement, Officer Adamson's report, the video, pictures of the cigarette, Whitesell's witness statement, and the Suspicious Substance Confirmation form, Officer Andrews found Mr. Davis guilty of possessing an intoxicant. *Id.* Officer Andrews assessed sanctions, including a loss of earned credit time and the imposition of a previously-suspended credit-time sanction. *Id.*

3

Mr. Davis appealed to the facility head and the appeal review officer. Dkts. 12-10, 12-11, 12-12. Both appeals failed. *Id.*

### III. Analysis

Mr. Davis challenges his disciplinary conviction on two grounds: no evidence proves that he possessed intoxicants in violation of Code 231-B, and Officer Andrews violated due process by denying his video request.

### A.    Sufficiency of Evidence

Mr. Davis argues that no evidence proves that he violated Code 231-B. He notes that no video evidence confirms that he was smoking as Officer Adamson alleged and that no evidence proves that the cigarette contained an intoxicant.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455 –56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports

a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Here, Mr. Davis challenges the strength of the evidence against him. No security video verifies Officer Adamson's conduct report, and Whitesell's statement contradicts her account. Similarly, no chemical test verifies that the homemade cigarette was an intoxicant. However, Officer Adamson stated in her conduct report that the cigarette she saw Mr. Davis smoking contained paper that "appeared to be chemically laced." Dkt. 12-1. And her notice of confiscated property describes a "homemade cigarette containing chemical soaked papers." Dkt. 12-2. Moreover, Investigator Prulhiere signed a document stating that he examined the cigarette and found it "identical to other evidence that has proven to be contaminated by an intoxicant chemical" based on his training and experience. Dkts. 12-6, 12-7. These documents are evidence from which the hearing officer could conclude that Mr. Davis was smoking a cigarette containing a substance that "may alter or impair normal mental or physical functions." Dkt. 12-14.

By highlighting potential weaknesses in the evidentiary record, Mr. Davis asks the Court to reweigh the evidence, which it cannot. *Rhoiney*, 723 F. App'x at 348. The record shows that some evidence supports the hearing officer's decision, and that is all due process requires. *Hill*, 472 U.S. at 455 –56.

**B.    Denial of Evidence**

Mr. Davis also argues that the denial of his video request deprived him of due process. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539

F.3d 766, 780–81(7th Cir. 2008). As the petitioner, Mr. Davis faces the burden of establishing that

any evidence he was denied access to was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d

674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's]

testimony would have helped him" and thus "the district court properly denied relief" on the

petitioner's claim that he was wrongfully denied a witness).

The security video shows a dark room from two angles. Some inmates and perhaps staff

members can be seen moving around the housing unit, but no details are visible in the shadows.

The Court cannot even see the chair where Mr. Davis states he was sitting. *See* dkt. 18. No images

in the video are clear enough to raise a reasonable probability that Mr. Davis could have achieved

a different outcome. The video is not material or exculpatory and withholding it could not have

violated due process. *Toliver*, 539 F.3d at 780–81.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of

the government." *Wolff,* 418 U.S. at 558. Mr. Davis's petition does not identify any arbitrary action

in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he

seeks. Accordingly, Mr. Davis's petition for a writ of habeas corpus is **denied,** and the action is

**dismissed with prejudice.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 11/18/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

6

Distribution:

LEE DAVIS
208538
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov